## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MOHAMED KHAIRULLAH, *et al.*

        *Plaintiffs,*

   v.

MERRICK GARLAND, Attorney General of the United States, in his Official Capacity, *et al.*

        *Defendants.*

Civil Action No: 3:23-cv-30095-MGM

## <u>NOTICE OF SUPPLEMENTAL AUTHORITY</u>

During argument on the Government's motion to transfer or dismiss the claims in this matter, the Court invited Defendants to provide additional information regarding (1) how other courts have handled proceedings in which certain sensitive national security information is submitted *in camera*, *ex parte*, and (2) the authorities protecting the sensitive national security information at issue in this case. The Government provides the below response.

**1.** "[I]n cases in which sensitive materials may be in issue, . . . the court has inherent authority to review such material *ex parte*, *in camera* as part of its judicial review function." *Olivares v. TSA*, 819 F.3d 454, 462 (D.C. Cir. 2016) (cleaned up) (citation omitted); *see also Jifry v. FAA*, 370 F.3d 1174, 1182 (D.C. Cir. 2004) (collecting cases). For example, courts have upheld the legitimacy of *in camera*, *ex parte* submissions related to "an individual's placement on the [Terrorist Screening Dataset], as well as any explanation for the placement." *Jibril v. Mayorkas*, 101 F.4th 857, 866–67 (D.C. Cir. 2024) (holding the district court did not abuse its discretion in reviewing a Government declaration *ex parte* and *in camera*, without giving plaintiffs an opportunity to challenge its contents), *cert. denied*, No. 24-293, 2024 WL 4743104 (U.S. Nov. 12, 2024) (*Jibril II*).

Courts presented with *in camera*, *ex parte* submissions may grant motions based on those submissions, and "endeavor to explain [their] reasoning as clearly as possible" without revealing the information submitted *in camera, ex parte*. *Jibril v. Mayorkas*, No. 1:19-CV-2457-RCL, 2023 WL 2240271, at *6 (D.D.C. Feb. 27, 2023) (*Jibril I*); *see also Jibril II*, 101 F.4th at 868 ("[T]he District Court usefully employed hypotheticals to impartially assess the matters in dispute while avoiding explicitly disclosing the contents of the Government's *ex parte* submission.").

**2.** With regard to the specific information submitted *in camera, ex parte* by the Government in this case, none of the material that has been submitted is classified. *See, e.g.*, Exec. Order No. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009) (prescribing uniform system for classifying, safeguarding, and declassifying national security information); *see also United States v. Reynolds*, 345 U.S. 1, 6–8 (1953).

1

Rather, the material submitted to date includes Sensitive Security Information ("SSI") and information protected by the Law Enforcement Privilege ("Law Enforcement Sensitive" information, or "LES").

SSI is a statutory privilege that constitutes, in relevant part, information the disclosure of which would "be detrimental to the security of transportation." 49 U.S.C. § 114(r); *see also* 49 C.F.R. pt. 1520 (governing the maintenance, safeguarding, and disclosure of information that the Transportation Security Administration (TSA) has determined to be SSI. Congress has prohibited disclosure of SSI absent TSA approval, *see* 49 U.S.C. § 114(r), and, in accordance with its statutory mandate, TSA has adopted regulations regarding the protection of SSI, *see* 49 C.F.R. pt. 1520. As a general matter, SSI may only be disclosed to "covered persons who have a need to know, unless otherwise authorized in writing by TSA." *See* 49 C.F.R. § 1520.9(a)(2).[1]

An individual's status on or off certain subsets of the Terrorist Screening Dataset ("TSDS"), as well as certain related information, such as reasons for any such placement, is SSI. Disclosure of that information is prohibited under the pertinent statutes and regulations because such disclosure would be detrimental to transportation security. *See Matar v. TSA*, 910 F.3d 538, 540 (D.C. Cir. 2018) (noting that placement on certain TSDS subsets, as well as any explanation for placement, is SSI "restricted from public access"); *Blitz v. Napolitano*, 700 F.3d 733, 737 n.5 (4th Cir. 2012) (describing sensitive information that, by regulation, may not be released by TSA); *Shearson v. Holder*, 865 F. Supp. 2d 850, 861 n.2 (N.D. Ohio 2011) (recognizing that "the TSD[S] status of a particular individual can neither be confirmed nor denied"), *aff'd*, 725 F.3d 588 (6th Cir. 2013); *see also* 49 C.F.R. § 1520.5(b)(9)(ii) (SSI includes "[i]nformation and sources of information used by a passenger or

---

[1] Certain non-covered persons engaged in civil litigation in district court may seek access to SSI if they meet certain conditions set forth in Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Pub. L. No. 109-295, § 525, 120 Stat. 1355, 1381-82 (Oct. 4, 2006). Under this section, in order to access certain SSI, a party or party's counsel must establish that they have a substantial need for relevant SSI in preparation for their case, they must successfully undergo a criminal history check and terrorist threat assessment like that done for aviation workers, and the court must enter an order that protects SSI from unauthorized or unnecessary disclosure.

property screening program or system, including an automated screening system"); Protection of Sensitive Security Information, 69 Fed. Reg. 28066-01, 28071 (May 18, 2004) (interim final rule adding 49 C.F.R. § 1520.5(b)(9)(ii)) ("This is intended to cover . . . lists of individuals identified as threats to transportation or national security.").

In contrast to SSI, the law enforcement privilege is a common law privilege that "has been recognized in the absence of a statutory foundation." *In re Dep't of Investigation of City of New York*, 856 F.2d 481, 483 (2d Cir. 1988); *see also Ohio Bureau of Workers' Comp. v. MDL Active Duration Fund, Ltd.*, 2006 WL 3311514, at *3 (S.D. Ohio Nov. 13, 2006) (describing the law enforcement privilege as "a common law privilege which has been recognized in both state and federal courts" (citing *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341 (D.C. Cir. 1984)). Courts have upheld the assertion of this privilege to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *United States v. Taylor*, 2015 WL 9274934, at *2 (M.D. Tenn. Dec. 18, 2015) (quoting *In re Dep't of Investigation of City of New York*, 856 F.2d at 484); *see also Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 64 (1st Cir. 2007) (upholding the FBI's assertion of the law enforcement privilege in an APA case); *id.* at 68 ("The FBI has a legitimate interest in maintaining the secrecy of sensitive law enforcement techniques.").

Consistent with the law enforcement privilege, the Government does not acknowledge in public filings whether any individuals are or are not included in the TSDS, as that revelation would compromise important law enforcement and national security interests. *See, e.g.*, *Salloum v. Kable*, No. 4:19-cv-13505, ECF No. 61 at 12–15, 17 (E.D. Mich. Sept. 29, 2022) (concluding that documents sought that relate to placement in the TSDS or TSDS status, as well as any materials considered in connection with searches and seizures of plaintiff's electronic devices or his person, and any

information regarding what private entities may have access to TSDS-related information, are necessarily protected by the law enforcement privilege); *Scherfen v. U.S. DHS*, No. 3:CV-08-1554, 2010 WL 456784, at *8 n.5 (M.D. Pa. Feb. 2, 2010) ("Because the TSDB status of Plaintiffs can neither be confirmed nor denied, this Court cannot discuss . . . the contents of [documents revealing Plaintiffs' status] submitted for *in camera* review[.]"); *see also Elhady v. Kable*, 993 F.3d 208, 215 (4th Cir. 2021) ("Disclosure [of TSDS status] would disrupt and potentially destroy counterterrorism investigations because terrorists could alter their behavior, avoid detection, and destroy evidence.").

Last, this Court asked whether certain information could be made available for attorneys' eyes only. "Attorneys' eyes only" procedures may "provide insufficient protection for the confidential law enforcement information at issue" given "the consequences of accidental disclosure." *In re The City of New York*, 607 F.3d 923, 936–37 (2d Cir. 2010). And in any event, attorneys' eyes only disclosure would still have to follow the process set forth in Section 525(d), which governs the disclosure of SSI and includes a showing of substantial need, a criminal history check and security threat assessment, and a SSI-specific protective order. *See supra* at 2 n.1; *see also* Dep't of Homeland Sec. Appropriations Act, 2007, Pub. L. 109-295, § 525(d), 120 Stat. 1382 (Oct. 4, 2006).

Dated: November 26, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

LAUREN A. WETZLER
Deputy Branch Director

*/s/ Alexandra J. Widas*
ROBERT W. MEYER
ALEXANDRA J. WIDAS
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Washington, DC 20005
Tel: (202) 993-5177; Fax: (202) 616-8470
robert.w.meyer@usdoj.gov

alexandra.j.widas@usdoj.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I certify that on November 26, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent e-mail notification of such filing to all CM/ECF participants.


*/s/  Alexandra J. Widas*

Alexandra J. Widas

*Counsel for Defendants*