UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MOHAMED KHAIRULLAH, *et al.*, | * * * | |
| Plaintiffs, | * * | Civil Action No. 23-30095-MGM |
| v. | * * | |
| JAMES R. MCHENRY,[1] acting Attorney General of the United States, in his Official Capacity, *et al.* | * * * * | |
| Defendants. | * | |

ORDER

January 31, 2025

MASTROIANNI, U.S.D.J.

    Defendants have filed an *in camera*, *ex parte* memorandum of law, as well as an *in camera*, *ex parte* declaration, in support of their request to transfer venue. (Dkt. Nos. 34, 35.) While the publicly filed memorandum of law (Dkt. No. 33) limits the transfer argument to 28 U.S.C. §§ 1404(a) and 1406(a) for convenience of the parties and witnesses, the *ex parte* memorandum raises a standing argument in support of the transfer request. Defendants lodge a factual challenge, in the *ex parte* memorandum, to this court's subject matter jurisdiction as to one or more of the named plaintiffs. (Dkt. No. 34 at 8-9.) Defendants, however, ask the court to resolve this factual challenge in secret without any input or argument from the opposing parties and without even disclosing the true basis for the court's decision. This is entirely contrary to the judiciary's history and tradition, which relies on the adversarial process to resolve disputes.

---

[1] James R. McHenry became the acting Attorney General of the United States on January 20, 2025 and is substituted automatically as a defendant pursuant to Federal Rule of Civil Procedure 25(d).

Fortunately, although the information Defendants seek to keep hidden from Plaintiffs and their counsel is statutorily protected Sensitive Security Information ("SSI") under 49 U.S.C. § 114(r), Congress has provided a mechanism for parties and/or their counsel in civil litigation to obtain access to this protected information, subject to a showing of substantial need, a criminal history and terrorist background check, and a court-issued protective order. *See* Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Pub.L. No. 109-295, 120 Stat. 135, 1382 (Oct. 4, 2006). For the following reasons, the court finds Plaintiffs have demonstrated a substantial need for obtaining this SSI under section 525(d) and for purposes of the related law enforcement privilege, provided a strong "attorneys' eyes only" protective order is entered and Plaintiff's counsel completes the statutorily required background checks.

Federal courts have an independent and "unflagging obligation to notice jurisdictional defects and to pursue them on our own initiative," since "litigants cannot confer subject matter jurisdiction on a federal court by 'indolence, oversight, acquiescence, or consent.'" *Espinal-Dominguez v. Com. of Puerto Rico*, 352 F.3d 490, 495 (1st Cir. 2003) (quoting *United States v. Horn,* 29 F.3d 754, 768 (1st Cir. 1994)); *see also In re Plaza-Martinez*, 747 F.3d 10, 12 (1st Cir. 2014) (explaining that a federal "court is duty-bound to notice, and act upon, defects in its subject matter jurisdiction sua sponte" (quoting *Spooner v. EEN, Inc.*, 644 F.3d 62, 67 (1st Cir. 2011)). In particular, the standing requirement "constitute[s] the 'irreducible constitutional minimum' . . . which is an 'essential and unchanging part' of Article III's case-or-controversy requirement . . . and a key factor in dividing the power of government between the courts and the two political branches." *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Moreover, when faced with a factual challenge to subject-matter jurisdiction, as here, a court is not bound to "accept the plaintiff's allegations as true but can 'weigh the evidence and satisfy itself as to the existence of its power to hear the case.'" *Toddle Inn Franchising, LLC v. KPJ Assocs., LLC*, 8 F.4th

2

56, 61 (1st Cir. 2021) (quoting *Torres-Negron v. J & N Records, LLC*, 504 F.3d 151, 162 (1st Cir. 2007)); *see also Valentin v. Hosp. Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) ("In conducting this inquiry, the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction. . . . [W]hen a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject-matter jurisdiction has attached.").

In adjudicating such factual disputes, courts generally insist—as a matter of fundamental fairness, basic due process, and overall accuracy—that each party be provided with access to the other party's evidence and the opportunity to contest it; in other words, secret evidence is inherently improper. *See Ass'n for Reduction of Violence v. Hall*, 734 F.2d 63, 67 (1st Cir. 1984) ("Our system of justice does not encompass *ex parte* determinations on the merits of cases in civil litigation." (internal quotation marks omitted)); *Perioperative Servs. & Legistics, LLC v. United States Dep't of Veterans Affs.*, 57 F.4th 1061, 1066 (D.C. Cir. 2023) ("[P]arty access to evidence is a hallmark of our adversary system that serves to preserve both the appearance and reality of fairness." (internal quotation marks omitted)); *Vining v. Runyon*, 99 F.3d 1056, 1057 (11th Cir. 1996) ("[O]ur adversarial legal system generally does not tolerate *ex parte* determinations on the merits of a civil case." (internal quotation marks omitted)); *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1069 (9th Cir. 1995) ("[T]he very foundation of the adversary process assumes that use of undisclosed information will violate due process because of the risk of error."); *Lynn v. Regents of Univ. of California*, 656 F.2d 1337, 1345–48 (9th Cir. 1981) ("The receipt and review by the district court of [*ex parte* evidence] for the purpose of assisting it to make factual determinations or to evaluate other evidence violated principles of due process upon which our judicial system depends to resolve disputes fairly and accurately."); *Chekkouri v. Obama*, 158 F. Supp. 3d 4, 5–6 (D.D.C. 2016) ("*Ex parte* submissions 'generally are disfavored because they conflict with a fundamental precept of our system of justice: a

fair hearing requires a reasonable opportunity to know the claims of the opposing party and to meet them.'" (quoting *United States v. Microsoft Corp.*, 56 F.3d 1448, (D.C.Cir.1995)); *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 4684842, at *7 (N.D. Cal. Sept. 19, 2014) ("[C]ourts may conduct *in camera* review to assess the scope of privilege or confidentiality, but not to rule on the merits of an underlying disputed issue."). As Justice Gorsuch recently explained in a concurrence: "Efforts to inject secret evidence into judicial proceedings present obvious constitutional concerns. Usually, 'the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue.'" *TikTok Inc. v. Garland*, 604 U.S. ----, 2025 WL 222571, at *11 (2025) (Gorsuch, J., concurring in judgment) (quoting *Greene v. McElroy*, 360 U.S. 474, 496 (1959)).

Although Defendants cite some cases where courts have accepted and relied upon such one-sided evidence, this court finds those cases are distinguishable or unpersuasive. For example, in *Jabril v. Mayorkas*, 2023 WL 2240271 (D.D.C. Feb. 27, 2023), *aff'd*, 101 F.4th 857 (D.C. Cir. 2024), the court explained: "Based on the information the government has submitted *ex parte*, the Court sees no conceivable way that the Jabrils could demonstrate that they have standing, even with a full opportunity for adversarial testing of the government's position." *Id.* at *6. And in *Scherfen v. U.S. Dep't of Homeland Sec.*, 2010 WL 456784 (M.D. Pa. Feb. 2, 2010), the court explained that "Plaintiffs have not alleged that they continue to suffer the effects of the alleged discriminatory inclusion in the TSDB such that this Court could still grant meaningful relief if they no longer appear in that database and associated watch lists." *Id.* at *9. Here, however, Plaintiff Mirzay does allege that he continues to suffer the effects of inclusion on the watchlist even if he is no longer on the list, citing the denial letter of his gun license application by the West Springfield Police Department in 2020, which stated that "Mr. Mirzay has recently been on the terrorist watchlist" and that his brother "is currently on the terrorist watchlist." (Dkt. No. 29 ¶¶ 657-59.) Moreover, based on these same allegations, this court does infer that it is conceivable Plaintiff Mirzay could still demonstrate

standing in the face of the government's evidence "with a full opportunity for adversarial testing of the government's position." *Jabril*, 2023 WL 2240271, at *6.

The court also notes the government is attempting to affirmatively use the secret evidence, rather than merely shield its disclosure, in order to end or fundamentally alter the contours of this case. *See Ibrahim v. Dep't of Homeland Sec.*, 2012 WL 6652362, at *5 (N.D. Cal. 2012 Dec. 20, 2012) ("[W]here the holder [of a privilege] affirmatively seeks to use the evidence to win or to end the case, then, of course, any privilege must be deemed waived and both sides then have access to it, at least under an appropriate protective order. Here the government seeks to affirmatively use allegedly privileged information to dispose of the case entirely without ever revealing to the other side what its secret evidence might be."); *see also In re The City of New York*, 607 F.3d 923, 946-47 (2d Cir. 2010) ("[A]s a general matter, a party cannot use materials as a 'sword' in its defense 'while using privileges attaching to [materials relied upon for that defense] as a shield.'" (quoting *John Doe Co. v. United States*, 350 F.3d 299, 302 (2d Cir. 2003)).

On the other hand, the court rejects Plaintiffs' argument that an individual's status on the Terrorist Screening Database ("TSDB") is not SSI. Under 49 U.S.C. § 114(r), Congress required the Administrator of the Transportation Security Administration ("TSA") to "prescribe regulations prohibiting the disclosure of information obtained or developed in carrying out security . . . under chapter 449 of this title if the Administrator decides that disclosing the information would . . . be detrimental to the security of transportation." The applicable regulations define SSI and prohibit its disclosure, except "to covered persons who have a need to know." 49 C.F.R. § 1520.9(a)(2); *see* 49 C.F.R. § 1520.5(b). Courts have universally held that at least some subsets of the TSDB, including the No Fly List and Selectee List, as well as certain related information, is SSI. *See Matar v. Transportation Sec. Admin.*, 910 F.3d 538 540 (D.C. Cir. 2018) ("An individual's placement on the No Fly List or Selectee List, as well as any explanation for the placement is 'Sensitive Security

5

Information' that is restricted from public access."); *Blitz v. Napolitano*, 700 F.3d 733, 737 n.5 (4th Cir. 2012) ("The pertinent regulations deem the following to be sensitive security information that may not be publicly release: TSA security directives or orders; the identities of individuals on no-fly and selectee lists; and 'security screening information,' including '[a]ny procedures, . . . instructions, and implementing guidance pertaining thereto, for screening of persons . . . that is conducted by the Federal government or any other authorized person."); *Crooker v. Transportation Sec. Admin.*, 323 F. Supp. 3d 148, 153 (D. Mass. 2018) ("The No Fly List is statutorily protected as [SSI] pursuant to 49 U.S.C. § 114(r)."); *Kalu v. Internal Revenue Serv.*, 2015 WL 4077756, at *8-9 (D.D.C. July 1, 2015); *Scherfen*, 2010 WL 456784, at *8 n.5; *see also Elhady v. Kable*, 993 F.3d 208, 215 (4th Cir. 2021); *Kovac v. Wray*, 109 F.4th 331, 337 (5th Cir. 2024). Plaintiff's argument that "[t]o be SSI . . . the information must originate with TSA in some meaningful way," and cannot be obtained from other government agencies, finds no support in the applicable statutes, regulations, or precedent. (Dkt. No. 52 at 1.)[2]

Still, "[a] designation of Sensitive Security Information is not a bar to production, but rather evokes certain prerequisites to production that must be followed in order to protect the sensitive nature of the information." *Thomas v. GATX Corp.*, 2020 WL 35633426, at *2 (M.D. La. Sept. 21, 2020). As the government explains in footnote 1 of its Notice of Supplemental Authorities: "Certain non-covered persons engaged in civil litigation in district court may seek access to SSI if they meet certain conditions set forth in Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Pub. L. No. 109-295, § 525, 120 Stat. 1355, 1381-82 (Oct. 4, 2006)." (Dkt. No. 50 at 2 n.1.) In particular, under § 525(d),

> In civil proceedings in the United States District Court, where a party seeking access to SSI demonstrates that the party has substantial need of relevant SSI in the

---

[2] The court also notes that it must give deference to the "Executive Branch's judgment in the national security area." *Elhady v. Kable*, 993 F.3d 208, 228 (4th Cir. 2021); *see also Ziglar v. Abbasi*, 582 U.S. 120, 142 (2017) ("National-security policy is the prerogative of the Congress and President."); *Holder v. Humanitarian L. Project*, 561 U.S. 1, 33-34 (2010).

>preparation of the party's case and the party is unable without undue hardship to obtain the substantial equivalent of the information by other means, the party or party's counsel shall be designated as a covered person under 49 C.F.R. Part 1520.7 in order to have access to the SSI at issue in the case, provided that the overseeing judge enters an order that protects the SSI from unauthorized or unnecessary disclosure and specifies the terms and conditions of access, unless upon completion of a criminal history check and terrorist assessment like that done for aviation works on the person seeking access to SSI, or based on the sensitivity of the information, the Transportation Security Administration or DHS demonstrates that such access to the information for the proceeding presents a risk of harm to the nation.

Section 525(d) of the Department of Homeland Security Appropriations Act of 2007, Pub.L. No. 109-295, 120 Stat. 135, 1382 (Oct. 4, 2006); *see Corbett v. Transportation Sec. Admin.*, 767 F.3d 1171, 1183 (11th Cir. 2014); *Ibrahim v Dep't of Homeland Sec.*, 669 F.3d 983, 998 (9th Cir. 2012); *Elhady v. Pekoske*, 835 F. App'x 83, 86-87 (6th Cir. 2020) (unpublished); *Dozier v. Genesee & Wyoming R.R. Servs. Inc.*, 2024 WL 4016794, at *2 (W.D. La. Feb. 8, 2024); *DelVecchia as next Friend of A.D. v. Frontier Airlines, Inc.*, 2024 WL 454995, at * 2 n.2 (D. Nev. Feb. 5, 2024); *Thomas*, 2020 WL 5633426, at *2; *Mcswain v. United States*, 2016 WL 4530461, at *5-6 (D. Nev. Aug. 30, 2016).

The court finds that Plaintiffs have a substantial need for the SSI contained within both the *ex parte* memorandum and declaration in order to fairly adjudicate the venue, transfer, and standing issues. In addition, Plaintiffs are unable to obtain this information or the substantial equivalent by other means, as "the government has a general policy of not disclosing TSDB status, whether positive or negative, in response to inquiries." *Elhady*, 993 F.3d at 215. However, in light of the sensitive nature of this information and its statutorily protected status, the court concludes that an appropriately comprehensive attorneys' eyes only protective order would protect against unnecessary disclosure. *See Chekkouri v. Obama*, 158 F. Supp. 3d 4, 6 (D.D.C. 2016). Moreover, pursuant to § 525(d), Plaintiffs' counsel must successfully undergo a criminal history check and terrorist threat assessment before accessing the materials.

As to the government's assertion of the law enforcement privilege, the court finds that common law privilege applies to the *ex parte* information as well. *See Gulluni v. Levy*, 85 F.4th 76, 85

7

(1st Cir. 2023); *Maniar v. Mayorkas*, 2023 WL 2709040, at *3 (D.D.C. Mar. 30, 2023); *Salloum v. Kable*, 2022 WL 22893346, at *6 (E.D. Mich. Sept. 29, 2022). However, "the law enforcement privilege is not absolute, it may be overcome by a sufficient showing of authentic necessity that courts determine on a case-by-case basis." *Id.*; *see also Hall*, 734 F.2d at 66. The court concludes Plaintiff has demonstrated a sufficient need for the material in order to adequately contest the government's assertions. In other words, the qualified law enforcement privilege must give way if, as here, it "is essential to a fair determination of a cause." *Hall*, 734 F.2d at 66 (quoting *Rovario v. United States*, 353 U.S. 53, 60-61 (1957)); *see also United States v. Formanczyk*, 949 F.2d 526, 529 (1st Cir. 1991). Moreover, a strong protective order can adequately protect against disclosure and thus preserve the privilege's underlying purpose of not publicly revealing sensitive law enforcement techniques and information. *See United States v. Tsarnaev*, 968 F.3d 24, 74 (1st Cir. 2020) (citing *Hall*, 734 F.2d at 66), *rev'd on other grounds*, 595 U.S. 302 (2022); *see also Commonwealth of Puerto Rico v. United States*, 490 F.3d 50, 62 (1st Cir. 2007).

Accordingly, the court finds that the *ex parte* materials must be provided to Plaintiffs' counsel, provided such counsel completes the required background checks and the court enters a sufficient protective order. The court therefore ORDERS Plaintiffs' counsel to apply to TSA for the criminal history and terrorist assessment background checks under § 525(d). The parties shall also confer and file a joint status report, by **February 14, 2025**, regarding the content of a strong attorneys' eyes only protective order and the steps taken by the parties with regard to the background checks, as well as an estimated timeframe for completion of the background checks.

It is So Ordered.

      /s/ Mark G. Mastroianni
      MARK G. MASTROIANNI
      United States District Judge